JARRET BROTHERS COMPANY, INC. *vs.* THE CARROLL WORSTED MILLS, INC.

APRIL 24, 1936.

PRESENT: Flynn, C. J., Moss, and Capotosto, JJ.

FLYNN, C. J. This is an appeal in equity taken by the Industrial Trust Company, a banking corporation, from a decree entered by a justice of the superior court, denying its petition to review and to vacate an order previously entered *ex parte* by the same justice in the administration of the receivership of the Carroll Worsted Mills, Inc. For convenience, the Industrial Trust Company will be referred to as the bank, Carroll Worsted Mills, Inc., as the mills, and William T. Lees as the receiver.

The *ex parte* order, above referred to, was entered at the instance of the receiver and authorized him, as receiver, to bring an action at law against the bank to recover the amount of money alleged to be held on checking deposit in said bank, standing in the name and to the credit of said mills, and claimed by the receiver as an asset of the mills.

The record and transcript disclose that, on April 3, 1933, William T. Lees was appointed temporary receiver of the mills upon the petition of Jarret Bros. Company, Inc., one of its creditors. On the same date, the temporary receiver duly qualified and made demand upon the bank for possession of the balance of the checking account, namely, $6,862.96, which the receiver claimed was deposited at that time in said bank in the name and to the credit of the mills. This demand was refused by the bank on the ground that it had applied the amount of said checking account as partial-payment of the principal sum of a promissory note in the sum of $11,500, made by the mills and endorsed individually by George W. Carroll, president and a majority stockholder of the mills. The note, which was in renewal of one given to the bank in consideration of its previous loan to the mills, was not due until May 15, 1933.

On April 18, 1933, by proper decree, said temporary receiver was made the permanent receiver and May 20, 1933, was fixed as the last day for creditors to file claims against the mills. The bank accordingly filed, on April 21, its claim with the receiver in the amount of $4,593, being apparently the balance remaining due on the mills' note after said application of the amount of the mills' checking account in partial-payment thereof, allowing an adjustment of $44.04 for rebate of interest. The claim, however, did not specifically set out these facts and the receiver sent the bank no notice of a disallowance of its claim as filed. On May 20, in the course of administering the receivership, the receiver filed his motion for permission to bring an action at law against the bank to recover the amount of said checking account, which the bank presumed, according to the

testimony, to credit as partial-payment on the note of the mills,. and this motion was granted by the justice in equity *ex parte* and a suitable order was entered. Following the entry of this order, the receiver commenced an action at law against the bank by writ, dated May 20, served on the bank on May 21 and duly entered in the superior court. Thereafter, the report of the receiver, with a schedule of creditors' claims against the mills, allowed or disallowed, came on for hearing and was allowed. No objection was made to this report in which the bank's claim, as filed, was allowed by the receiver without prejudice to pursuing the law action, already commenced and then pending, to recover the full amount of the checking account. The bank entered a special appearance to the law action and also filed its motion to dismiss the same for lack of authority to sue and for want of jurisdiction. On the hearing of the motion to dismiss the law action, the trial court reserved decision thereon to permit, as the court suggested, the bank to seek an opportunity to be heard by the justice in equity, not upon the question of jurisdiction, but on the matter of the lack of notification relating to the *ex parte* order which permitted the receiver to bring the action at law. The bank accordingly filed in equity its petition to review and to vacate such *ex parte* order previously entered, and already acted upon by the receiver. An extended hearing upon this petition was held, at which considerable testimony was taken, and after argument thereon, the justice in equity denied the bank's petition to review and to vacate the *ex parte* order. A decree accordingly was entered and the bank seeks, by this appeal, to reverse this latter decree.

The receiver has filed in this court a motion to dismiss the bank's appeal, and contends, among other things, that the decree in question is not a final decree and therefore the appeal is prematurely brought. The bank contends substantially that the decree is final, or at least comes within the class of exceptional interlocutory decrees which are appealable. The controlling question, therefore, is whether

the decree is of such a nature as to permit an immediate appeal.

The general rule, well established in this state, is that an appeal lies only from a final decree. *McAuslan* v. *McAuslan*, 34 R. I. 462. In that case the court not only stated the rule but also set out the standard by which the finality of a decree could be tested. Certain exceptions thereto have been recognized from time to time where the decree, though technically interlocutory, nevertheless, so far determines the merits of a controversy upon a distinct or separate division of the cause, as to make it, in effect, a final decree. These exceptions generally have contained the additional element of probable and irremedial injury, unless the appeal were entertained without awaiting a final decision upon the merits of the whole cause. *McAuslan* v. *McAuslan, supra; Joslin* v. *Astle*, 56 R. I. 61 and cases cited.

Applying these principles of law to the facts presented in the instant case, we are of the opinion that the decree in question is not a final decree. Neither can we say reasonably that it so far determines the merits of any distinct or separate division of the cause as to bring it within the recognized exceptions to the general rule, or that irreparable injury would probably follow from a refusal to hear the appeal immediately.

The nature of the decree, in each case, must be determined by its own facts. In the instant case, the transcript of evidence discloses clearly that the decree appealed from is interlocutory in both form and substance. The original order, which the decree confirmed, contemplated merely permission to the receiver to bring an action at law against the bank. By the statute, as well as by the decree of his appointment, the receiver had the right and duty to reduce to possession and to protect the assets of the mills in the interest of all creditors.

The bank was allegedly a debtor of the mills on the date of the receiver's appointment. The bank had notice of the pending action at law before the court allowed the receiver's

report upon creditors' claims as filed, without prejudice to his right to pursue said action at law against the bank to recover the full amount of the mills' checking account, but it entered no objection to the court's allowance of that report in that form. The petition of the receiver was an incident to the full and fair administration of the receivership and was addressed to the sound discretion of the court. In the absence of abuse, and none is shown here, the exercise of such discretion is not ordinarily appealable.

The only substantial question presented to the justice in equity at this hearing was whether the action proposed by the receiver and authorized by the court must be considered as inequitable and improvident in view of the bank's contention concerning the settled status of the law upon the questions involved. He therefore considered the evidence and authorities offered by the bank, not for the purpose of deciding what were the facts in issue or what was the law to be applied, but rather to satisfy his own mind that the law was not so clearly established here as to close the entire question and thus make the action at law inequitable or improvident.

The attitude of the court and counsel for the bank at the hearing is illustrated by the following comments from the transcript: "The Court. Of course the exact question of right in set-off on its merits is not before me this morning. That is a matter I take it that has been raised in this law action. . . . Of course, the actual question of the rights is not before us now but you are calling to the Court's attention that you believe the authorities are so clear that there is practically no chance or likelihood of the receiver prevailing.

"Mr. Smith. That is our position."

Later the court again states: "I am not going to try the law action in this equity suit but I suppose I have got to give some consideration to what these gentlemen present as bearing on the question of the likelihood, or the reasonable likelihood or probability of getting somewhere on it."

After considering the authorities cited to him as bearing upon this particular aspect of the case, the justice in equity, in his rescript, came to the following conclusion: "All the questions of law which the bank has raised on its petition at this hearing can equally well be raised by way of defense to the suit brought by the receiver. After giving the whole matter consideration, the Court is of the opinion that it is not inequitable for the receiver to be allowed to maintain the action at law and that he has not waived his rights so to do; that he is not estopped and that the question of set-off is not *res adjudicata*." No finding of fact or ruling on a matter of law was made in the decree appealed from, by which the petition was simply denied and dismissed.

The bank, however, throughout its brief and argument, persists in contending that the justice in equity so decided the vital issues of the controversy that the matter, because of this decree, became *res adjudicata*. In our opinion, nothing contained in the subject-matter of the *ex parte* order, or in the transcript, rescript or decree, justified this contention.

No issue of fact or law, which was controlling upon the merits of the controversy, was presented as such by the bank's petition to the court for determination, and none was decided. Consequently, a decree refusing to review and to vacate a procedural order, such as is presented here, can not be said to be *res adjudicata* upon the merits of any issue of the controversy between these parties.

The bank, in support of its contention that the decree is appealable, stresses *Edwards* v. *Miller*, 47 R. I. 235. In that case the receiver sought and obtained permission of the court to finally adjust and compromise certain claims of the corporation receivership against several insurance companies. The receiver there sought to surrender finally all claim to certain possible assets and not to take action, as here, to collect or increase the assets of the receivership estate in the interest of all creditors. The court, in that case, said: "If the receiver should exercise the authority

given him under the order before determination by this court as to its propriety, and later we should hold the order to have been erroneously entered, great embarrassment would arise to said insurance companies and to the receiver, and irreparable injury might result to the respondent, Miller's Sons, Inc., through the loss of its claims against the insurance companies."

We feel that there is a marked difference between the nature and finality of this decree or order authorizing a compromise of claims which discharges all debts and surrenders finally all claims to possible additional assets, and a decree merely permitting a preliminary step to sue at law an alleged debtor to recover more assets for a receivership estate. The cases are clearly distinguishable from each other on their facts.

The bank also argues that the receiver is estopped to sue at law, because he submitted the cause to the equity court for determination of the underlying question upon the law involved, and relies upon *Roberts* v. *Golden Flake Doughnut Shops*, 53 R. I. 465, 167 A. 259. There, a party voluntarily and actually submitted a proper issue to the jurisdiction of equity for the purpose of hearing and determining, and it did determine, the merits of the whole controversy, and the court rightly held he was estopped later to claim that equity had no jurisdiction. In the instant case, the receiver did not submit to the jurisdiction of equity to determine the merits of any division of this controversy but rather elected to seek the law forum, where all issues, upon proper evidence, could be heard and determined upon their merits apart from the equity jurisdiction. The cases are not alike.

It cannot be said that probable irreparable harm will result to the bank unless its appeal is heard immediately. If, in the trial of the law action, the law be found as settled in favor of the bank's right to apply the checking deposit as partial-payment of the mills' note indebtedness to the bank, then the bank will suffer only the inconvenience of trial which is not different from the cases of numerous other

successful litigants. On the other hand, if the law to be applied to all the proper issues to be presented in the law action be otherwise than as the bank now urges, then its contention here will have been shown to have been untenable.

A careful consideration of the transcript satisfies us that the decree in question is not final or appealable at this time.

The motion of the receiver to dismiss the appeal of the Industrial Trust Company is granted, and the cause is remanded to the superior court for further proceedings.

*Huddy & Moulton, E. Butler Moulton, Stanley H. Smith, Jr.,* for Industrial Trust Co.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr.,* for receiver of respondent corporation.